^uch>e Undehjvood
delivered the opinion of the court.
McCampbell, in April 1830, instituted an action of ejectment against Young, to recover a small piece of ground within (he enclosure of the latter. it seems that the lands of the parties adjoin. rI hat there is a common corner acknowledged by both. But they differ as to the position of the boundary line running from that corner, thus making a triangle containing one acre and three-fourths of an acre, part of which is the subject of controversy involved in this suit. We say only part.of it is involved in the controversy, because, it appears from the proof, that at the commencement of the action, each party had a portion of the ground enclosed, and that part within Young’s enclosure could alone be recovered. The triangle in dispute, is designated on the plat by two lines running from the common corner, one drawn in black, the other in red ink. Young claims to the red line, McCampbell to the black.
McCampbell has exhibited a title regularly derived from the commonwealth to his vendor, James Me- *491 Campbell, and a deed from James McCampbell tb him, dated 2d March, 1830, and introduced evidence1 conducing'to shew that the title included all the landl up to the black line.
oAj ’iri ,
A & B clam adjacent tracts of land interfering in part, A has the better title, B elite's and «adores a past of the disputes] territory, bat after A has entered irpon his land outside of the in-terferí! nee, before twenty years elapse, B shewing no title, A way consider bsra-sslf disseizeS smd expel B by action of from the enclosed land, A is construct-8e>sionto°the extent of his title.
*491 Young produced no patent. Pie gave in evidence, a deed from Calloway, dated 30th September, 1800, and proved that the boundary of that deed, under which he claimed, extended to the red line.
It seems, from the evidence, that Calloway, the vendor of Young, took possession of the laud conveyed to Young as early as 1783, and that he and Young have been íesidingon the land ever since, but no improvement, or enclosure was made over the black line upon the disputed ground, by Young or those under whom he claimed, until within ten, twelve, or fifteen years previous to the trial, nor was any enclosure made upon the disputed ground, until after McClure, the patentee under whom McCampbell claims,had settled within the bounds of his patent, claiming to the extent thereof, but on the outside of the interference. It appears, in proof, that McCampbell and those under whom he claimed, were possessed by actual enclosure of all the ground between the two lines, except that occupied by Young within his enclosure, and that they were so possessed for two or three years next proceeding the trial which took place in October 1830.
There is nothing in the record which shews any. right or title in Calloway, to the land now claimed by Young,except his settlement thereon. No title paper has been shewn which authorzied Calloway to claim possession up to the red line marketfon the plat. It is clear, by the execution of the deed in 1800, and Young’s possession under that deed, that it was his intention to extend his possession to the red line, — Such intention would govern the extent of posesssion if there were no opposing circumstance; Calk vs. Lynn’s heirs; Í. Marshall 346. Counting Young’s possession from the date of his deed, afiche would have had twenty years adverse possession corhplete up to the red line, before McCampbell’s vendor entered and became possessed of any part of the disputed land between the two lines; and if his possession ought to be so counted, it would follow conclusively, that the *492 right of entry of McCampbell would have been bar* red before the institution of this suit, and consequently. that the verdict and judgment should have been for Young. But McClure entered upon his patent, cja;ming possession up to the black line, before Young or his vendor had improved or occupied, by any visible enclosure, any part of-the ground in dispute. The pj-ecise time of McClure’s entry is not stated. It is strongly to be inferred that he entered before the date of Young’s'deed, but there is no gound to doubt his having entered before’ Young had been possessed twenty years, of any part of the land claimed by him. Such entry of McClure under the title exhibited on the outside of the interference, was more effectual to in* vest the possession of the disputed ground not actually occupied or entered on by either party, until a subsequent period, than an entry on a part of the land convteyed by Calloway outside of the lap, when that deed is not supported by any title. It is certain that Young first took actual possession, by enclosing a part of the interference. But this actual occupation cannot have relation to a period anterior to the time when it was first taken, and it had not been taken twenty years' before the commencement of the action. Be-sidesj McCampbell and those under whom he claimed were actually possessed of a part of the disputed territory before there was any pretext for saying that Youngwas protected by twentyyearsactual possession of the interference, and this fact, according to Hord vs. Bodley, V. Littell, 91, Smith &c. vs. Morror, Ib. 214, and Taylor vs. Shield’s heirs, Ib. 300, placed Mc-Campbell in possession of the whole interference, and gave him the right to elect to be disseized, for the purpose of trying the title, and consequently justified the institution of this action, for the purpose of obtaining a judgment under which Young might be peaceably expelled from his actual occupation of the land. But the possession conferred on McCampbell by his entry within the interference to that partin the actual occupancy of Young, was a possession by construction of law, and cannot be regarded as possession in fact, of land actually enclosed and occupied by another. In the case of Hunt &c. vs. Wickliffe, II. Peters 212, the supreme court lay down the law to be where each party holds possession of distinct parts of the *493 land In controversy, “that the party having the better right, is in constructive possession of all the land not occupied in fact by his adversary.” It might be ferred, from the limited manner in which the rule is laid down, that the supreme court would not allow a constructive possession to extend to the land actually occupied by the holder of the inferior claim. It is certain, that the supreme court, in the case cited,gave Wickliffe the benefit of the bar resulting from twenty years possession, so far as it was actual. Whether a like result would have taken place in this cause, if Me* Campbell had delayed the institution of his suit until Youngs actual occupancy had been of twenty years continued duration, or whether it would have been avoided by the entry of McCampbell within the interference, and the possession taken and claim set up by him, need not now be debated. It is sufficient that Young has had no such possession, and consequently McCampbell’s right to recoverin this action,was very clear, unless the act to revive and amend the cham-perty and maintainance law, approved January 7, 1824, operating upon the facts interposes a bar.
The in* tention with which entry is made upon land, limits the extent of the entry if there be no opposing circumstances.
The statue to ree¿Vjethn<^ champarty and main-finance law, thereb’an*611 actual pos. session, at the dateof the orsahfad-9 verse to the n,°t_ th'e vendor"5 might have J*.ad construe* io^fe avoids convey-anceas null.
The first section of that act declares, “That no person shall sell or purchase, by deed of conveyance, or bond, or executory contract, any pretended title or right to land, of which any other person than such vendor or vendee shall at the time of such sale or purchase have possession, adverse to the right, or title so sold or purchased; and every deed, conveyance, bond or contract, made, executed or entered into in violation of this section, shall be void, and no right of action shall accrue to either party under such deed, conveyance, bond or contract.” Now, when the deed was made on the 2d March, 1830, by James McCampbell to John G. McCampbell, the lessor of the plain-tiffj James Young, the appellant, was actually possessed of a part of the land, claiming title to if under a deed from Calloway. The statute, therefore, rectlyapplies, unless theconstructive possession which James McCampbell acquired by virtue of his actual possession of a part of the interference saves the conveyance. We are of opinionthatthe Legislature,in the passage of the act, had respect to the actual and ostensible possession of lands, and that they did not intend to permit a vendee to remove or evict the ac *494 tual possessor, by virtue of a title acquired in the face of such actual possession. Thelessor’s title is of that description, it is therefore condemned by the statute, and he ought not to have succeeded upon it. Young’s actual enclosure and possession was notice to the lessor and all the world, not to purchase any land within his, Young’s fences. Upon this ground only, we reverse the judgment.
Hewitt, for appellant; Owsley, for appellee.
We have looked at the case upon its merits, without stating the various points in the order insisted on and made. That course would have cost us useless labor, and it will be seen from this opinion, how we would dispose of all the questions presented.
Judgment reversed with costs, and cause remanded for a new trial.